```
                  UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF TENNESSEE
                       NASHVILLE DIVISION
```

STEPHANIE PALMER            )
                            )
        Plaintiff,           )
                            )
          v.                ) Civil Action No. 3:05-1040
                            ) **Jury Demand**
PREVOST CAR, INC.           ) Judge Trauger/Brown
                            )
        Defendant.           )

To: The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Currently pending in this civil action is Defendant Prevost Car, Inc.'s ("Prevost") Motion to Stay and Compel Arbitration (Docket Entry No. 3) on Plaintiff Stephanie Palmer's ("Palmer") claims of discrimination and retaliatory termination in violation of Title VII of the Civil Rights Act of 1964, as amended.

This Motion is supported by a memorandum of law (Docket Entry No. 4) and various documents and authorities[1] (Docket Entry

---

[1] One of Prevost's attachments is a memorandum and order from Chancellor Ellen Hobbs Lyle of the Davidson County Chancery Court. Chancellor Lyle considered a dispute between the parties to this litigation concerning an alleged violation of the Tennessee Human Rights Act. In that case, Chancellor Lyle granted Prevost's motion to stay the litigation and compel arbitration. Palmer correctly notes that Chancellor Lyle's memorandum and order is not binding on this Court. Accordingly, the Magistrate Judge has reviewed and considered Chancellor Lyle's memorandum and order, as it is instructive, but will not cite to the memorandum and order as authority. However, the Magistrate Judge does, after review, come to the same conclusion as Chancellor Lyle does in her well-reasoned opinion.

1

No. 6). Palmer has filed a response in opposition to this motion. (Docket Entry No. 10.) Prevost has also filed a reply to Palmer's response. (Docket Entry No. 13.)

For the reasons set forth below, the Magistrate Judge recommends that the Defendant's Motion to Stay and Compel Arbitration be **GRANTED**.

## II.   BACKGROUND

On January 31, 2003, Palmer entered into an employment agreement with Prevost. (Docket Entry No. 10 at 1.) Prevost is a foreign corporation with its principal place of business in Lyndhurst, New Jersey. (Docket Entry No. 4 at 1.) Palmer was employed in Nashville, Tennessee. (Id.)

In relevant part, the employment agreement provides:[2]

> 12.  **Dispute Resolution**.  Any and all disputes or controversies arising out of or relating to this Agreement or breach hereof shall be settled by arbitration in New Jersey, by a panel of three (3) Arbitrators, in accordance with the rules then pertaining to the American Arbitration Association, and judgment upon the decision rendered may be enforced in any court of competent jurisdiction.  The cost of such arbitration proceedings shall be borne equally by the parties, each of whom shall bear his own attorney's fees, except as hereinafter provided.
>
> 12.1 If it is determined by the arbitrators that one (1) party was in default hereof or unreasonably or frivolously instituted or unreasonably or frivolously defended any arbitration proceeding ("Defaulting Party"), the Defaulting Party shall bear the costs of the arbitration proceeding and pay to the other party the

---

[2]The entire agreement is included in Prevost's filings. (Docket Entry No. 6, Ex. A.)

2

reasonable attorney's fees and costs incurred in such proceeding, which amounts shall be separately determined by the Arbitrators in such proceeding and become part of the amount of the Arbitration Award, payable by the Defaulting Party to the other party.

\* \* \*

16. **Governing Law**.  This Agreement shall be construed in accordance with and governed by the laws of the State of New Jersey.

17. **Consent to Jurisdiction**.  The parties agree that the state and Federal courts located in the State of New Jersey shall have exclusive jurisdiction over any claim raised by either party hereto as a result of, or arising out of, or with respect to this Agreement, or any breach hereof.

\* \* \*

19. **Waiver**.  The Employer, in its sole discretion, may waive any of the requirements imposed by this Agreement.  The Employer, however, reserves the right to deny any similar waiver in the future.  Each such waiver must be express and in writing and there will be no waiver by conduct.  Pursuit by the Employer of any available remedy, either in law or equity, or any action of any kind, does not constitute waiver of any other remedy or action.  Such remedies and actions are cumulative and not exclusive.

20. **Oral Modifications Not Binding**.  This Agreement may not be modified or terminated orally.  No modification, termination or attempted waiver shall be valid unless in writing signed by the party against whom the same is sought to be enforced.

(Docket Entry No. 6, Ex. A.)

Palmer initialed the bottom of each page of the employment agreement and signed the final page of the agreement. (Docket Entry No. 6, Ex. A.)  Palmer was terminated from Prevost on February 12, 2004, (Docket Entry No. 10 at 1), and instituted

3

this action on December 9, 2005 (Docket Entry No. 1).

### III.  CONCLUSIONS OF LAW

The parties agree that under both Tennessee and Federal law, arbitration agreements are generally favored. Benton v. Vanderbilt Univ., 137 S.W.3d 614, 617 (Tenn. 2004); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991).  Indeed, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 11 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).  The parties also agree that the Federal Arbitration Act ("FAA") generally applies to employment contracts. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001).

The FAA states that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2005); see also Tenn. Code Ann. § 29-5-302(a) (2000).

In deciding whether to enforce this arbitration agreement, this Court must first consider whether a Title VII claim is generally subject to arbitration.  Floss v. Ryan's Family Steakhouses, Inc., 211 F.3d 306, 311 (6th Cir. 2000)(citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)).  If so,

4

the Court must consider (1) whether the parties executed a valid arbitration agreement and, if so, (2) whether the statutory claims fall within the scope of that agreement. Id. at 311-12.

If a valid arbitration agreement is found which covers the claims of this suit, the Court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3 (2005).

A. Title VII Claims Are Generally Subject to Arbitration

"Although all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" Gilmer, 500 U.S. at 26 (quoting Mitsubishi Motors, 473 U.S. at 628).

In Gilmer, the Supreme Court found no evidence of a congressional intent to preclude arbitration of claims filed under the Age Discrimination in Employment Act. 500 U.S. at 35. In 1991, the Sixth Circuit expanded the Gilmer reasoning to apply to claims filed under Title VII. Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305, 310 (6th Cir. 1991). Subsequent rulings in this Circuit have upheld the reasoning in Willis that there exists no evidence of congressional intent to preclude arbitration of Title VII claims. See, e.g., Cosgrove v. Shearson Lehman Bros., No. 95-3432, 1997 WL 4783 at **2, 1997 U.S. App.

LEXIS 392 at *5-*6 (6th Cir. 1997).

    B.  <u>The Parties Executed A Valid Arbitration Agreement</u>

The validity of the arbitration agreement derives from the validity of the employment agreement, and as such, is determined by state contract principles. Clause 16 of the employment contract specifies that the laws of the state of New Jersey will apply. (Docket Entry No. 6, Ex. A.) However, Prevost waives this pursuant to Clause 19, (<u>id.</u>), in favor of the laws of Tennessee. (Docket Entry No. 4 at 5 n.1.) Palmer does not seem to dispute this waiver as her response cites to the Tennessee Code Annotated, Tennessee Supreme Court decisions, and Sixth Circuit decisions. (Docket Entry No. 10 at 2-3.)

In the state of Tennessee, "[w]hile a contract may be either expressed or implied, or written or oral, it must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy, and sufficiently definite to be enforced." <u>Johnson v. Central Nat'l Ins. Co.</u>, 210 Tenn. 24, 34-35 (1962).

Palmer correctly notes that because employment contracts are often offered on a "take it or leave it" basis, a court should carefully analyze the validity of an employment contract to ensure that it is not an impermissible contract of adhesion. However, Palmer makes no argument that the employment agreement

6

was impermissibly adhesive, and therefore, this Report will not consider any possible adhesive qualities of the contract.[3]

Palmer makes five arguments as to why the arbitration agreement is unenforceable under Tennessee law: (1) because there is no mutuality of obligation in the employment agreement, (2) because Palmer did not knowingly and voluntarily waive her right to a jury trial, (3) because Palmer did not knowingly waive her right to litigate statutory claims, (4) because the arbitration provisions do not allow Palmer full protection of all rights given by the statute, and (5) because arbitration would be prohibitively expensive. Each argument will be considered in turn.

1. *The Employment Agreement Evidences Mutuality of Obligation*

"[M]utual promises of one to another" is sufficient consideration for a contract. Rodgers v. S. Newspapers, Inc., 214 Tenn. 335, 342 (1964).

Palmer claims that there is no mutuality of obligation, and thus, that "there is effectively no contract at all because both parties are not bound to its terms." (Docket Entry No. 10 at 4.) She argues that "[t]his is true because the Defendant maintains the right to agree to the terms of the contract or not do so." (Id.) By this statement, Palmer refers to Clause 19 of the

---

[3]Even if this were argued, it would appear to be a difficult argument to sustain in light of Howell v. Rivergate Toyota, Inc., 144 Fed. Appx. 475, 478, 2005 WL 1736582 (6th Cir. 2005).

7

employment agreement, which provides that Prevost, "in its sole discretion, may waive any of the requirements imposed by this Agreement."  (Docket Entry No. 6, Ex. A.)

Palmer seemingly rejects this clause as evidencing that there is no mutuality of obligation, while simultaneously embracing it by citing Tennessee authority after Prevost invoked the waiver clause to allow this dispute to be governed by Tennessee law.  (Docket Entry No. 10 at 2-3, 4.)

Regardless of the inconsistencies in Palmer's treatment of the waiver clause, her argument of lack of mutuality of obligation must fail.  Prevost's reply directs the Court to Clause 20 of the employment agreement, which is a common "no oral modification" clause.  This clause states that "no . . . attempted waiver shall be valid unless in writing signed by the party against whom the same is sought to be enforced."  (Docket Entry No. 6, Ex. A.)  Therefore, while Prevost can, in its sole discretion, waive any part of the contract, if the waiver is unfavorable to Palmer, the waiver is invalid unless Palmer signs a writing memorializing it.  (See id.)

Both parties are bound by all terms of the agreement, unless Prevost decides to waive a term <u>and</u> gets Palmer's signature approving the waiver.  Palmer, in effect, has veto power over any waiver, and as such, there exists mutuality of obligation.

However, even if the contract did not contain a "no oral

8

modification" clause, Palmer's argument would still fail.  In Howell, the Sixth Circuit considered whether there existed mutuality of obligation in an employment contract which contained a clause allowing the employer to unilaterally amend the agreement.  The contract in Howell did not contain a "no oral modification" clause.  The court held that the employer's duty of good faith and fair dealing prohibited it from amending the contract for an improper or oppressive purpose.  Id. at 479.  Likewise, here, the duty of good faith and fair dealing prevents Prevost from waiving contract provisions for an improper purpose.

2. *Palmer Knowingly and Voluntarily Waived Her Right to a Jury Trial*

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of a jury trial shall be preserved . . . ."  U.S. Const. Amend. VII.  Palmer cites K.M.C. Co. v. Irving Trust Co., 757 F.2d 752 (6th Cir. 1985), for the proposition that a contractual waiver of the right to a jury trial must be knowing and voluntary.  (Docket Entry No. 10 at 5.)  Prevost states that this has been "expressly rejected" by Cooper v. MRM Inv. Co., 367 F.3d 493 (6th Cir. 2004).  (Docket Entry No. 13 at 2.)  Both parties mischaracterize the Sixth Circuit authority they cite.  The court in K.M.C. Co. merely stated that the knowing and voluntary standard was appropriate "in this instance," and did not even base its holding on such a standard.

9

757 F.2d at 757 (holding that even if the standard for waiver is "clear," the standard was not met). In Cooper, the Sixth Circuit did not "expressly reject" K.M.C. Co., it merely distinguished K.M.C. Co. from Burden v. Check Into Cash, 267 F.3d 483 (6th Cir. 2001), which held that "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." Burden, 267 F.3d at 492.

Nevertheless, the Cooper court's adoption of the Burden rule and limitation of the K.M.C. Co. rule shows a tendency in the Sixth Circuit to hold that the waiver of Seventh Amendment rights "is a necessary and fairly obvious consequence" of a valid arbitration agreement. Burden 267 F.3d at 492.

Palmer also cites to Fuentes v. Chevin, 407 U.S. 67, 95, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972), a case considering deprivation of property under the Due Process Clause of the Fourteenth Amendment. The United States Supreme Court stated that "a waiver of constitutional rights in any context must, at the very least, be clear." Id.

The Fuentes requirement of a clear waiver of the right to a jury trial must necessarily be satisfied by the signing of an arbitration agreement, as the Sixth Circuit considers such waiver a "necessary and fairly obvious consequence" of an arbitration agreement. Burden 267 F.3d at 492. Therefore, Palmer's argument that her waiver of her right to a jury trial was not knowing must

10

fail.

   3.  *Palmer Knowingly Waived Her Right to Litigate Statutory Claims*

Palmer argues that because the arbitration clause in the employment agreement states that "[a]ny and all disputes <u>arising out of or relating to this Agreement</u> or breach hereof shall be settled by arbitration...," (Docket Entry No. 6, Ex. A (emphasis added)), she did not knowingly waive her right to litigate statutory claims.

Palmer cites to a single Ninth Circuit case, <u>Nelson v. Cypress Baghdad Copper Corp.</u>, 119 F.3d 756 (9th Cir. 1997), to support her assertion that absent express language informing her of such, she did not waive her right to litigate her statutory claims. Presumably there is no Sixth Circuit case law on point. However, assuming (without recommending) that courts in this Circuit follow the holding of <u>Nelson</u>, the instant case is clearly distinguishable.

In <u>Nelson</u>, the Ninth Circuit reversed the district court's grant of summary judgment for the defendant based on an arbitration clause. <u>Id.</u> at 759. The court held that Nelson had not validly waived any of his rights under the Americans with Disabilities Act. <u>Id.</u> However, in <u>Nelson</u>, the arbitration clause was contained in an employee handbook which was given to

11

Nelson during the course of his employment. Id. at 761. The court held (1) that Nelson's signing of an acknowledgment of receipt did not show a knowing agreement to arbitrate, (2) that Nelson's continued employment after reading the arbitration clause in the employee handbook did not amount to a knowing agreement to arbitrate, and (3) that Nelson's initiation of a complaint with the company in compliance with the policies in the employee handbook did not constitute a valid waiver of the right to a judicial forum. Id. at 761-62. The court finally stated that "the unilateral promulgation by an employer of arbitration provisions in an Employee Handbook does not constitute a knowing agreement on the part of an employee to waive a statutory remedy provided by a civil rights law." Id. at 762 (citation omitted).

The key distinguishing feature between Nelson and the case at bar is the fact that the arbitration agreement here is found in an employment contract which Palmer signed (and initialed on each page) when she was hired. Conversely, the arbitration agreement in Nelson was contained in an employee handbook which Nelson was given after already being employed by Cypress Baghdad.

The arbitration agreement here is not Nelson's "unilateral promulgation by an employer of arbitration provisions." Id. at 762. Rather, it is a signed contract by two parties. Therefore, not only is Nelson not binding on this Court, it is not even persuasive.

12

Palmer further argues that the arbitration clause was "buried in the middle of a seventeen page document with nothing setting it apart from the other provisions of the contract which do not affect Ms. Palmer's legal rights." (Docket Entry No. 10 at 6.) This argument is hollow. A contract, by its very nature, affects and alters a party's legal rights. Indeed, a contract is simply an agreement to be bound by other restraints than the law typically requires. See, e.g., Hillsboro Plaza Enters. v. Moon, 860 S.W.2d 45, 47 (Tenn. App. 1993) (stating "[t]he rights and obligations of contracting parties are governed by their written agreements.")

Therefore, while the analysis of the scope of this arbitration agreement is better left for Section III(C), the discussion therein will show that the arbitration agreement in this case covers Palmer's statutory claims. There is nothing further in Palmer's response to show that she did not knowingly agree to arbitrate all disputes with Prevost. In fact, her signature at the end of the contract and her initials on the page including the arbitration agreement evidence her understanding of the agreement and her intent to be bound by it.

4. *Arbitration Affords Palmer All Rights Granted By Statute*

Both parties cite to Mitsubishi Motors for the proposition that by agreeing to arbitrate a statutory claim, a party does not forgo substantive rights afforded by statute. 473 U.S. at 628.

13

Palmer, however, argues that the language in the arbitration clause of the employment agreement would limit substantive rights granted by statute, and therefore, that arbitration is not a proper forum. (Docket Entry No. 10 at 7.) As the argument goes, the Civil Rights Act provides for the recovery of attorney's fees by a prevailing plaintiff, whereas Clause 12.1 of the employment agreement only provides for costs and attorney's fees upon the arbitrators' finding that the action was "unreasonably or frivolously defended." (Id.; Docket Entry No. 6, Ex. A.)

Clause 12 of the employment agreement states that the arbitration shall be "in accordance with the rules then pertaining of the American Arbitration Association" ("AAA"). (Docket Entry No. 6, Ex. A.) As Prevost's reply points out, the AAA allows the arbitrators to "grant any remedy or relief that the arbitrator[s] deem[] just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court." American Arbitration Association, National Rules for the Resolution of Employment Disputes (Including Mediation and Arbitration Rules), Rule 34(d) (2005).[4] The AAA further gives the arbitrators "the authority to provide for the reimbursement of representative's fees, in whole or in part, as part of the remedy, in accordance with applicable law."

---

[4] The AAA National Rules for the Resolution of Employment Disputes can be accessed at http://www.adr.org/sp.asp?id=22075.

Id., Rule 34(e).

Therefore, the AAA Rules do not foreclose the statutory remedies, but rather give the arbitrators a broader palate from which to fashion a remedy. As such, Palmer's argument that arbitration under this employment agreement would limit her substantive rights granted under the Civil Rights Act is simply without merit.

     5.  *Arbitration Is Not "Prohibitively Expensive"*

Palmer also challenges the validity of the arbitration agreement because it would be "prohibitively expensive." (Docket Entry No. 10 at 7.) "[A] provision of an arbitration agreement is unenforceable if it imposes costs that are likely to deter a substantial number of employees from vindicating their rights in the arbitral forum." Howell at 481 (citing Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 659 (6th Cir. 2003)). Where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

As Prevost notes, the AAA Administrative Fee Schedule limits employee filing fees to $125, probably less than Palmer paid her attorney to compose the opposition to this Motion. American

15

Arbitration Association, National Rules for the Resolution of Employment Disputes (Including Mediation and Arbitration Rules), Administrative Fee Schedule, Filing Fees. However, Prevost fails to note that "[f]or each day of a hearing before a multi-arbitrator panel, an administrative fee of $500 is payable by the employer." Id., Administrative Fee Schedule, Hearing Fees. Because Clause 12.1 requires the parties to share fees and costs, Palmer would likely have to pay $250 in administrative fees per day unless the arbitrators allocate costs in another way.

Still, these fees and costs do not appear to be excessive. Should fees become excessive, the company could agree to pay those fees, or as a part of general relief, the arbitrators could award Palmer those fees. While Palmer argues that the fees and costs would be high, she makes no specific showing of what they would be. The undersigned has determined that she would likely pay a $125 filing fee and $250 per day in administrative fees. Full jury trial on cases of this nature are routinely completed in three days or less. Arbitration should not take even that much time.

Therefore, Palmer has not carried her burden of proving that she would incur prohibitive expenses. In fact, the Court was only directed to the specific numerical data in the AAA fee schedule by Prevost.

Finally, Palmer argues that it would be unduly expensive to

16

arbitrate in New Jersey. However, in its reply, Prevost agreed to waive the venue clause in favor of arbitrating in Tennessee, Palmer's home state. (Docket Entry No. 13 at 4.) Even so, in Howell, the Sixth Circuit upheld an arbitration agreement which required a Nashville, Tennessee resident to arbitrate his disputes with his employer in Bexar County, Texas. Howell at 477, 481. The court reasoned that, like Palmer, the employee had not carried his burden of demonstrating that the costs associated with out-of-state arbitration would have the impermissible deterrent effect contemplated in Morrison. Id. at 481 (stating that the employee presented "no evidence of the costs of applying to a Texas court for appointment of an arbitrator, and no evidence of how such fees and costs compare to the costs of litigation.")

Therefore, the argument of prohibitive costs is likewise unavailing to Palmer.

C. Palmer's Statutory Claims Fall Within the Scope of the Arbitration Agreement

Finding that the arbitration agreement is valid, and that Palmer has not argued that any grounds exist in law or equity for its revocation, the undersigned next considers whether Palmer's statutory claims fall within the scope of the arbitration agreement.

17

Palmer argues that because the arbitration clause covers "any and all disputes or controversies <u>arising out of or relating to this Agreement</u> or breach hereof," (Docket Entry No. 6, Ex. A (emphasis added)), "a fair interpretation of the scope of the arbitration agreement is any dispute arising out of the agreement itself i.e. contractual disputes."  (Docket Entry No. 10 at 5.)

However, the Court should not be concerned with a "fair interpretation."  Palmer fails to recognize that it is her burden to show with positive assurance that the arbitration agreement is <u>not</u> susceptible of Prevost's interpretation, rather than simply to show that it <u>is</u> susceptible of her own.  <u>United Steel Workers v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) (further stating, "[d]oubts should be resolved in favor of coverage.")  Indeed, where a contract "contains a broad arbitration provision covering all controversies arising under the agreement, arbitration is ordered unless the person seeking to avoid it can show that the particular dispute is expressly excluded."  <u>Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.</u>, 706 F.2d 155, 160 (6th Cir. 1983).

Palmer argues that the fact that there is "absolutely nothing in the employment agreement that discusse[s] anti-discrimination laws, statutes, or even policies of the Defendant . . . is absolutely fatal to enforceability in this context."

(Docket Entry No. 10 at 6.)  However, the absence of such language is certainly not the "positive assurance that the arbitration clause is not susceptible of a meaning" contemplated in <u>United Steel Workers</u>.  363 U.S. at 582.

Therefore, though "a fair interpretation" of the arbitration clause may only include contract disputes, Palmer has not carried her burden of showing that the arbitration clause could not be read to include her Title VII claim.

## IV.  RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that Defendant Prevost Car, Inc.'s Motion to Stay and Compel Arbitration be **GRANTED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986).

19

**ENTERED** this  9th  day of June, 2006.

            /s/ Joe B. Brown
           JOE B. BROWN
           United States Magistrate Judge

20